Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| TOYS "R" US, INC. *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. _____ |
| | ) | |
| FUNG RETAILING LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 78]. The location of the Debtors' service address is One Geoffrey Way, Wayne, New Jersey 07470.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Toys "R" Us, Inc. ("Toys Inc.") and Toys "R" Us Europe, LLC and certain of the above-captioned debtors and debtors in possession (the "Taj Debtors" or "Plaintiffs")[2], by counsel, file this Complaint pursuant to 11 U.S.C. §§ 105 and 362 and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to extend the automatic stay and grant a temporary restraining order and preliminary injunction relief halting Fung Retailing Limited ("Fung" or "Defendant") from further prosecution of the arbitration proceeding it initiated against respondents TRU (UK) Asia Limited and Toys (Labuan) Holdings Limited (the "Non-Debtor Respondents").  In support thereof, the Taj Debtors state as follows:

## NATURE OF THE ACTION

1.      This is an adversary proceeding seeking declaratory and injunctive relief to stay and enjoin Fung's continued prosecution of arbitration it initiated in the International Chamber of Commerce against the Non-Debtor Respondents.  Fung's Request for Arbitration is attached hereto as Exhibit A.

2.      Fung's actions threaten to upend the Taj Debtors' reorganization.  Fung seeks to create through competing adjudication uncertainty about the status of the Asia JV.  This uncertainty will drive down bids—benefitting Fung (which can then either exercise its right of first refusal ("ROFR") or bid for the asset at a depressed price), but harming the Debtors and their creditors (whose primary basis for recoveries will be the value achieved from the Asia JV sale).

3.      Fung's actions also threaten core components of the restructuring process. Contrary to the "just, speedy, and inexpensive determination of every case and proceeding," Fed.

---

[2]      The Taj Debtors are Toys "R" Us Europe, Tru Taj LLC, Tru Taj Finance, Inc., TRU Taj Holdings 1, LLC, TRU Taj Holdings 2, Ltd., TRU Taj Holdings 3, LLC, TRU Asia, LLC, and TRU Taj (Europe) Holdings, LLC.

R. Bankr. P. 1001, and the related goal of "centralized decision-making," *see In re White Mountain Mining Co.,* 403 F.3d 164, 169–70 (4th Cir. 2005).   Fung seeks to have multiple tribunals consider issues rightly presented and centralized before this Court.  This poses the risk of inconsistent adjudication and protracted litigation about forum and enforceability.

4.     Fung only is able to create this chaos because of particularities relating to the Debtors' corporate structure.  If Debtor Tru Taj LLC owned the Debtors' interest in the Asia JV directly, then Fung plainly would be prevented from initiating arbitration by the automatic stay.  However, because Debtor Tru Taj LLC owns the Debtors' interest in the Asia JV *indirectly*, Fung initiated arbitration (the "Fung Arbitration") against the Non-Debtor Respondents.

5.     The Debtors thus seek to extend the automatic stay to non-Debtors with identical interests, and to enjoin Fung from further pursuing the arbitration.  As further described below, the Fung Arbitration should be stayed and Fung enjoined from continued prosecution for at least four reasons.  *First*, the Fung Arbitration will diminish the property that the Debtors could otherwise make available to creditors by driving down the bid price for the Asia JV.  *Second*, the identity of the Non-Debtor Respondents is inexorably interwoven with the identity of the Debtors.  *Third*, continued prosecution of the Fung Arbitration would distract key personnel integral to these bankruptcy proceedings from their bankruptcy-related responsibilities.  *Fourth*, continued proceedings against the Non-Debtor Respondents in another forum would prejudice the Debtors' opportunity and ability to defend themselves in the Fung Arbitration.  Accordingly, further prosecution of the Fung Arbitration against the Non-Debtor Respondents should be stayed and enjoined.

6.     The Debtor Plaintiffs thus file this Complaint and respectfully move the Court to enter a declaratory judgment extending the automatic stay to cover the Fung Arbitration against

the Non-Debtor Respondents.  Additionally, the Debtor Plaintiffs move this Court to enter an injunction barring Fung from further pursuing the Fung Arbitration.

## RELIEF REQUESTED

7.    The Debtor Plaintiffs seek a declaration that the prosecution of the Fung Arbitration and all claims therein against the Non-Debtor Respondents is stayed until completion of the Debtors' sale and restructuring process pursuant to sections 362(a)(1) and (a)(3) of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and rule 7001(9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8.    Additionally, the Debtor Plaintiffs seek to enjoin Fung from further prosecution of the Fung Arbitration and all claims therein against the Non-Debtor Respondents until completion of the Debtors' sale and restructuring process pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 7001(7).

## PARTIES

9.    On September 18, 2018 (the "Petition Date"), Toys Inc. and its debtor affiliates, including the Plaintiffs, each filed a voluntary petition for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code")

10.    The Defendant is a privately held company incorporated in Hong Kong.  The Defendant has submitted itself to the jurisdiction of the United States Bankruptcy Court for the Eastern District of Virginia (the "Court"), and this Court specifically held that it has personal jurisdiction over Defendant with respect to the bidding process.

## JURISDICTION AND VENUE

11.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern*

*District of Virginia*, dated July 10, 1984.  The Debtors confirm their consent, pursuant to Rule 7008 of the Bankruptcy Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.    Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

13.    The bases for the relief requested herein are sections 105 and 362 of the Bankruptcy Code and Bankruptcy Rule 7001.

14.    This Court has personal jurisdiction over all necessary parties pursuant to Rule 7004(f) of the Bankruptcy Rules.  This Court held that it has personal jurisdiction over Fung with respect to the bidding process; therefore, to the extent Fung's actions threaten the sale and plan process, they should be halted.  *See* 9/6/18 Hr'g Tr. at 191:1-8 ("I do think that having a collateral proceeding in Hong Kong that may interfere with the debtors' ability to maximize the process, interfere with the bidding process is inappropriate and I think that Fung has by immersing itself in the bidding process in this -- that is being overseen by this Court, has subjected itself to personal jurisdiction for those purposes …."); *id.* at 192:12-16 ("I see this offer of $760 million dollars as the minimum.  I won't take kindly to it being reduced pursuant to arbitration proceedings in Hong Kong and so to the extent that I have the ability to prevent that from happening, I intend to exercise that.").

## FACTS

15.    The Court recently approved the Debtors' plan to sell their most valuable remaining asset, a majority interest in Toys (Labuan) Holding Limited, often referred to as the

"Asia JV."[3]  It is based in Hong Kong and comprises the Debtors' business across Japan, China

and Southeast Asia. The Debtors own 84.87% of the Asia JV.  The remaining 15.13% is owned

by Fung, a China-based retailing arm of the overall Fung Group, whose core businesses are

comprised of companies in trading, logistics, distribution, and retailing. The Taj Debtors,

through non-debtor affiliate TRU UK Asia Ltd., and Fung are parties to a Shareholders'

Agreement dated March 24, 2017 ("Shareholders' Agreement").

16.     Debtor Tru Taj LLC holds (through non-debtor subsidiaries) ***the entirety of the***

***Debtors' interest in the Asia JV***.  In addition, Toys Inc.—the main Debtor in these cases and the

indirect holder of all interests in Tru Taj LLC—is party to the Shareholders' Agreement with

Fung and has guarantee obligations thereunder.  Shareholders' Agreement Section 10.

17.     Also, Debtor Toys Inc. indirectly owns Debtor Geoffrey LLC ("Geoffrey"),

which owns the Debtors' worldwide intellectual property rights, such as the names "Toys 'R'

Us" and "Babies 'R' Us," which it licenses to the Asia JV to support all of the Debtors' affiliated

stores throughout Asia.

18.     On June 11, 2018, the Debtors filed their *Motion for Entry of an Order (I)*

*Authorizing the Debtors to Take any Corporate Action Necessary to Enter Into a Sale and*

*Purchase Agreement Related to the Asia Business, (II) Authorizing the Debtors to Provide Bid*

*Protections in Connection with the Asia Sale and Purchase Agreement, and (III) Granting*

*Related Relief* [Docket No. 3379].

19.     On August 4, 2018, the Taj Debtors filed their *Motion for Entry of an Order (I)*

*Establishing Bidding Procedures for the Sale of Certain Assets, (II) Scheduling an Auction and*

---

[3]        "An Order (I) Authorizing the Debtors to Take Any Corporate Action Necessary to Enter Into a Sale and
Purchase Agreement Related to the Asia Business, (II) Authorizing the Debtors to Provide Bid Protections in
Connection with the Asia Sale and Purchase Agreement, and (III) Granting Related Relief," (the "Asia Sale Order.")
[Docket No. 3597].

*Hearing to Consider the Sale, (III) Approving the Form and Manner of Notice, (IV) Clarifying the Applicability of a Right of First Refusal and a "Drag" Right, and (V) Granting Related Relief* (the "Bid Procedure Motion") [Docket No. 4016].

20.     On August 29, 2018, the Debtors filed their *Reply in Support of their Motion for Entry of an Order (I) Establishing Bidding Procedures for the Sale of Certain Assets, (II) Scheduling an Auction and Hearing to Consider the Sale, (III) Approving the Form and Manner of Notice, (IV) Clarifying the Applicability of a Right of First Refusal and a "Drag" Right, and (V) Granting Related Relief* (the "Bid Procedures Reply") [Docket No. 4417].

21.     On September 6, 2018, the Court held it had jurisdiction over Fung with respect to matters relating to the bidding process.  Specifically, the Court held: "I do think that having a collateral proceeding in Hong Kong that may interfere with the debtors' ability to maximize the process, interfere with the bidding process is inappropriate and I think that Fung has by immersing itself in the bidding process in this -- that is being overseen by this Court, has subjected itself to personal jurisdiction for those purposes …."  (9/6/18 Hr'g Tr. at 191:1-8.)

22.     The Fung Objection and the Fung Arbitration aims to prevent this Court from adjudicating disputes that should be resolved by this Court, and instead having a private arbitration panel in Hong Kong decide whether and to what extent this Court is permitted to oversee the Debtors' sale of their asset and their restructuring.

23.     Fung seeks to adjudicate in Hong Kong, among other things, whether the Bankruptcy Court is the wrong forum ("[t]he Hong Kong Tribunal is the sole forum in which *all issues* raised by the [Debtors'] Motion … may be raised, argued, and adjudicated," Fung Objection at p. 3 (emphasis added); whether the arbitration clause in the Shareholders' Agreement should be enforced regardless of Fourth Circuit law to the contrary, *id.* at 2; whether

the Shareholders' Agreement and its ROFR provision are "valid, binding and enforceable," *id.* at 3; whether the Taj Lenders' credit bid constitutes "a bona fide 'offer' within the meaning of the Shareholders' Agreement and, therefore, it does not trigger the right of first refusal, drag along, and tag along obligations," *id.* at 3; and whether "[t]he drag along right is not enforceable unless Fung Retailing's right of first refusal is enforceable and performed in accordance with its terms," *id.* at 3.

24.     Fung's actions threaten to upend the Taj Debtors' reorganization.  Fung seeks, through competing adjudication, to create uncertainty about the status of the Asia JV and to impose in derogation of this Court's authority value-destructive delay on the Debtors' restructuring.  This uncertainty will drive down bids—benefitting Fung (which can then either exercise its ROFR or bid for the asset at a depressed price), but harming the Debtors and their creditors (whose primary basis for recoveries will be the value achieved from the Asia JV sale).  Fung's actions also threaten core components of the restructuring process.  Contrary to the "just, speedy, and inexpensive determination of every case and proceeding," Fed. R. Bankr. P. 1001, and the related goal of "centralized decision-making," *see In re White Mountain Mining Co.,* 403 F.3d 164, 169–70 (4th Cir. 2005), Fung seeks to have multiple tribunals consider issues rightly presented and centralized before this Court.  This poses the risk of inconsistent adjudication and protracted litigation about forum and enforceability.

25.     Fung only is able to create this chaos by relying on particularities relating to the Debtors' corporate structure.  If Debtor Tru Taj LLC owned the Debtors' interest in the Asia JV directly, then Fung no doubt would be prevented from initiating arbitration by the automatic stay.  However, because Debtor Tru Taj LLC owns the Debtors' valuable interest in the Asia JV *indirectly*, Fung initiated arbitration against non-Debtors the Non-Debtor Respondents.

26.     The Debtors thus seek to extend the automatic stay to the Non-Debtor Respondents, and to enjoin Fung from further pursuing the arbitration against them.  As further described below, the Fung Arbitration against the Non-Debtor Respondents should be stayed or enjoined.

### A. The Fung Arbitration Will Diminish the Value of Estate Assets and Thereby Affect the Property of the Debtors to the Detriment of Their Creditors.

27.     The Fung Arbitration will adversely impact property of the Debtors' estate by depleting or diluting assets potentially available for creditor recoveries.  It will create uncertainty that will prevent the highest and best bids on the Asia JV, and will significantly prolong these cases.

28.     As set out further in the Bid Procedures Motion and the Bid Procedures Reply, the Debtors are seeking to sell their interest in the Asia JV.  While in the initial rounds of bidding, the Debtors received multiple bids of over $1 billion, subsequent rounds of bidding yielded much lower bids.  As set out in the Tempke Declaration [Docket No. 4418], a key reason why the number of bidders has declined and why the price of bids has declined is the uncertainty that Fung has sowed around its minority interest in the Asia JV.

29.     The Fung Arbitration is yet another mechanism to create chaos that ultimately will depress interest in the Asia JV and bid prices.  Fung seeks findings in the Fung Arbitration that will depress bids.  It seeks to have the arbitral panel determine that "[t]he proposed Taj Transaction does not trigger the ROFR, Drag Along, and Tag Along obligations under the Shareholders' Agreement."  Fung Arbitration § E(c).  With this argument, Fung seeks to prevent any buyer from using the "drag-along" provision to purchase 100% of the equity in the Asia JV—meaning that a buyer will have no choice but to have Fung as a minority partner.  Fung also argues that "[t]he Tribunal must conduct an evidentiary hearing to determine the appropriate

value of the "Offered Price."  *Id.* § E(d).  Here, Fung argues that even if the ROFR rights are implicated, the Stalking Horse Bid should not be credited at the full $760 million amount—but rather that "the Tribunal must determine what (if any) value to ascribe to the so-called Credit Bid Amount."  *Id.* ¶ 39.  Should Fung prevail, it will argue that it can exercise its ROFR rights at less than the $760 million bid, diminishing the estate by the amount of the reduction.  *See* 9/6/18 Hr'g Tr. at 192:12-16 ("I see this offer of $760 million dollars as the minimum.  I won't take kindly to it being reduced pursuant to arbitration proceedings in Hong Kong and so to the extent that I have the ability to prevent that from happening, I intend to exercise that.").

30.     In addition, the arbitration process will be egregiously prolonged, which will further deplete value.  Under the ICC procedures, the Respondent is not even due to propose an arbitrator until about the time Debtors propose to conduct the auction to sell the asset.  Understandably, not one potential bidder has expressed any interest in acquiring the asset only to have to wait for completion of a foreign litigation to know whether its purchase cost or the nature of its ownership may change.  Second, if not stopped, the lingering Fung Arbitration risks the possibility that a separate tribunal may disagree with this Court's interpretation of bankruptcy law and this Court's orders—meaning that even if a sale closes, the winning bidder for the Asia JV may face the prospect of its ownership interest being challenged or upended.  Bidders factor this uncertainty into their bids, if they continue to bid at all, further depressing value available to creditors.  Even for the Stalking Horse Bid, the Taj Noteholders' consent is required to close.  Lingering uncertainty could jeopardize the ability to go effective.

31.     Thus, the Fung Arbitration, if not enjoined, would reduce or diminish the value of estate assets and thereby affect the property of the debtor to the detriment of the debtor's creditors as a whole.  Tempke's Declaration explains how Fung has created uncertainty,

negatively affected bidders, and contributed to a decline in bid prices.  *See* Docket No. 4418.

The initiation of arbitration before a foreign tribunal further compounds the risk to estate value.

**B. The Identity of the Non-Debtor Respondents Is Inexorably Interwoven with the Identity of the Debtors.**

32.     Debtor Tru Taj LLC holds (albeit through non-debtor subsidiaries) ***the entirety of the Debtors' interest in the Asia JV***.  In addition, Toys Inc.—the main Debtor in these cases and the indirect holder of all interests in Tru Taj LLC—is party to the Shareholders' Agreement with Fung and has guarantee obligations thereunder.  Shareholders' Agreement Section 10.

33.     No party, including Fung, has argued that it is improper or outside the bounds of this Court's authority to oversee the Debtors' sale of its Asia JV interest.  In fact, as noted in the Bid Procedures Reply and at the September 6, 2018 hearing, Fung fully presumed that this Court is required to supervise and approve the sale, because it conditioned its bid on the Court "approving bid procedures with bid protections for the proposed buyer" and receiving "an effective and unstayed order of the Bankruptcy Court ..., pursuant to section 363," including "a finding of 'good faith.'"  5/14/18 Fung Ltr. to Lazard at 3-5.

34.     Indeed, this Court is better positioned to adjudicate disputes with Fung in a centralized way and consistent with bankruptcy goals of "secur[ing] the just, speedy, and inexpensive determination of every case and proceeding."  Fed. R. Bankr. P. 1001; *see also In re White Mountain Mining Co.,* 403 F.3d 164, 169–70 (4th Cir. 2005) ("Arbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights contingent upon an arbitrator's ruling rather than the ruling of the bankruptcy judge assigned to hear the debtor's case.")  (quotation omitted).

**C. Continued Prosecution of the Fung Arbitration Would Distract Key Personnel Integral to these Bankruptcy Proceedings.**

35.     If the Fung Arbitration continues against the Non-Debtor Respondents, key Debtor employees, whose full attention to these chapter 11 proceedings is critical, would be distracted by discovery and by other proceedings in the Fung Arbitration.  The same employees of the Debtors would need to be involved even if the case proceeded only as to the Non-Debtor Respondents.  For example, Robert Zarra serves not only as the Executive Vice President – International Finance for Debtor Tru Taj LLC, but he also is the sole director of TRU (UK) Asia Limited and a director of Toys (Labuan) Holding Limited.

36.     The Taj Debtors have only limited capacity to run their businesses and effectuate a value-maximizing sale of the Asia JV.  At this point, the Debtors employ only five people primarily for the benefit of Taj, and the Debtors' legal department has shrunk to only two attorneys.  The Debtors rely on their vanishingly small leadership team to manage the Debtors' on-going restructuring challenges, not protracted foreign arbitration proceedings designed to impede the restructuring.

**D. Continued Proceedings Against the Non-Debtor Respondents in the Fung Arbitration Would Prejudice the Debtors' Opportunity and Ability to Defend Themselves.**

37.     Allowing the Fung Arbitration to proceed against the Non-Debtor Respondents while claims against the Debtors are stayed risks prejudicing the Debtors.  Notably, although Debtor Toys Inc. is a signatory to the Shareholders' Agreement and has rights and responsibilities thereunder, Fung did not initiate arbitration against Toys Inc.—no doubt because the automatic stay bars it from doing so.  But this means that a critical party will be absent from the Fung Arbitration, and risks competing determinations in dueling forums.  The Fung Arbitration seeks to have adjudicated in a Hong Kong arbitration rights and obligations

guaranteed and indemnified by Debtor Toys Inc., even though the Debtor will not participate or be heard there.

## FIRST CLAIM FOR RELIEF
### (Section 362 – Declaratory Judgment)

38.     The Debtor Plaintiffs repeat and re-allege Paragraphs 1–37 of this Complaint as if fully set forth herein.

39.     The Debtor Plaintiffs seek an order staying the prosecution of Fung's claims in the Fung Arbitration as to all Respondents therein until completion of the Debtors' restructuring process, pursuant to sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code.

40.     The extension of the stay is warranted and necessary because the Fung Arbitration will diminish the property that the Debtors could otherwise make available to creditors by driving down the bid price for the Asia JV; the identity of the Non-Debtor Respondents is inexorably interwoven with the identity of the Debtors; continued prosecution of the Fung Arbitration would distract key personnel integral to these bankruptcy proceedings from their bankruptcy-related responsibilities; and continued proceedings against the Non-Debtor Respondents in another forum would prejudice the Debtors' opportunity and ability to defend themselves in the Fung Arbitration.  Accordingly, the prosecution of the Fung Arbitration against the Non-Debtor Respondents should be stayed or enjoined.

41.     Based on the foregoing, the Debtor Plaintiffs seek a declaratory judgment extending the automatic stay to the Non-Debtor Respondents pursuant to sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF
### (Section 105 – Injunctive Relief)

42.     The Debtor Plaintiffs repeat and re-allege paragraphs 1–37 of this Complaint as if fully set forth herein.

43.     Additionally, the Debtor Plaintiffs seek an injunction pursuant to section 105 of the Bankruptcy Code barring Fung from continued prosecution of the Fung Arbitration until completion of the Debtors' sale and restructuring process.

44.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

45.     Here, as discussed above, the continuation of the Fung Arbitration would diminish and interfere with the property of the Debtors' estates and threaten their ability to successfully and efficiently reorganize.  Thus, this Court should apply section 105(a) to enjoin Fung's continued prosecution of the Fung Arbitration.

46.     If Fung's claims in the Fung Arbitration are not enjoined, the Debtors will suffer irreparable harm by being unable to achieve the highest and best offer for their most valuable asset, the Asia JV, and through prolonged and competing arbitration proceedings that will delay and impede their reorganization.  The Debtors also are likely to succeed on the merits with respect to extending the automatic stay or enjoining the Fung Arbitration in order to centralize proceedings and avoid competing adjudications.  The balance of equities tips in Debtors' favor, since Fung can still pursue any argument it chooses; it simply will need to do so in the Richmond bankruptcy court.  The injunctive relief sought will serve the public interest by promoting the Debtors' speedy and successful conclusion of these bankruptcy proceedings—a benefit to all constituencies—and advancing the objectives of the automatic stay.

47.     Based on the foregoing, the Debtor Plaintiffs respectfully request an injunction under section 105 of the Bankruptcy Code to enjoin Fung's continued prosecution of the Fung Arbitration until completion of these chapter 11 cases.

### PRAYER FOR RELIEF

WHEREFORE, the Debtor Plaintiffs respectfully demand judgment against the Defendants in this adversary proceeding, and request relief as follows:

(a)     entry of a declaratory judgment pursuant to section 362 of the Bankruptcy Code and Bankruptcy Rule 7001(9) that the automatic stay is extended to the Non-Debtor Respondents until completion of the Debtors' sale and restructuring process; and

(b)     entry of an injunction pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 7001(7) enjoining and prohibiting Fung from further prosecuting the Fung Arbitration until completion of the Debtors' sale and restructuring process; and

(c)     all such other relief as the Court may find just and proper.

*[Remainder of page intentionally left blank]*

Richmond, Virginia
Dated:  September 10, 2018

/s/ *Jeremy S. Williams*
_____

**KUTAK ROCK LLP**
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:   (804) 644-1700
Facsimile:    (804) 783-6192
Email:         Michael.Condyles@KutakRock.com
               Peter.Barrett@KutakRock.com
               Jeremy.Williams@KutakRock.com

*Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:         edward.sassower@kirkland.com
               joshua.sussberg@kirkland.com

**-and-**

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:         james.sprayregen@kirkland.com
               anup.sathy@kirkland.com
               chad.husnick@kirkland.com
               emily.geier@kirkland.com

*Co-Counsel to the Debtors
and Debtors in Possession*

**EXHIBIT  A**

C O N F I D E N T I A L

MARTIN ROGERS
martin.rogers@davispolk.com

JONATHAN CHANG
jonathan.chang@davispolk.com

**DAVIS POLK & WARDWELL**
18/F, The Hong Kong Club Building
3A Chater Road
Hong Kong

Phone:      + 852 2533 3300
Fax:         + 852 2533 3388

Attorneys for Claimant FUNG RETAILING LIMITED 馮氏零售集團有限公司

**ICC ARBITRATION**

| | |
|---|---|
| FUNG RETAILING LIMITED<br>馮氏零售集團有限公司,<br><br>                              Claimant,<br><br>v.<br><br>TRU (UK) ASIA LIMITED and<br>TOYS (LABUAN) HOLDINGS LIMITED,<br><br>                         Respondents. | Case No.<br><br><br>**REQUEST FOR ARBITRATION** |

CONFIDENTIAL

1. This is a Request for Arbitration ("**Request**") under Article 4 of the Rules of Arbitration of the International Chamber of Commerce ("**ICC**" and the "**ICC Rules**").

2. By way of this Request, and in accordance with Article 4 of the ICC Rules, Fung Retailing Limited 馮氏零售集團有限公司 (the "**Claimant**") demands that its dispute with TRU (UK) Asia Limited ("**TRU Asia**") and Toys (Labuan) Holdings Limited (the "**Asia JV**" and, together with TRU Asia, the "**Respondents**") under the Amended and Restated Shareholders' Agreement dated 24 March 2017 (the "**Shareholders' Agreement**") be referred to arbitration under the ICC Rules.  The Claimant and the Respondents are parties to the Shareholders' Agreement.

3. Further, in accordance with Article 4 of the ICC Rules, the Claimant provides the following information:-

## A.  The Claimant

**Name:** Fung Retailing Limited 馮氏零售集團有限公司 (a Hong Kong incorporated company)

**Registered Address:**

11th Floor, LiFung Tower
888 Cheung Sha Wan Road
Kowloon
Hong Kong

Attn: Company Secretary
Fax: +852 2686 1001

**Legal Representatives:**

Mr. Martin Rogers
Mr. Jonathan Chang

**Davis Polk & Wardwell**
18/F, The Hong Kong Club Building
3A Chater Road
Hong Kong

Phone: + 852 2533 3300
Email:  martin.rogers@davispolk.com
           jonathan.chang@davispolk.com
Fax:     + 852 2533 3388

The Claimant requests that all correspondence, notices, and other documents to be served upon it be directed and addressed to its solicitors, Davis Polk & Wardwell, using the contact details specified above.

## B.  The Respondents

**Name:** TRU (UK) Asia Limited (a company incorporated under the laws of England and Wales)

CONFIDENTIAL

| | |
|---|---|
| **Registered Address:** | c/o Toys "R" Us<br>One Geoffrey Way<br>Wayne, NJ 07470<br>Attn:    General Counsel |
| **Contact Person:** | General Counsel<br>Fax:    +1 973 614 4043 |
| **Legal Representative:** | Edward O. Sassower, P.C.<br>Joshua Sussberg, P.C. |

**Kirkland & Ellis LLP**
**Kirkland & Ellis International LLP**
601 Lexington Avenue
New York, New York 10022

Phone: + 1 212 446 4800
Email:  edward.sassower@kirkland.com
         joshua.sussberg@kirkland.com
Fax:    + 1 212 446 4900

-and-

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C.
Emily E. Geier

300 North LaSalle
Chicago, Illinois 60654

Phone: + 1 312 862 2000
Email:  james.sprayregen@kirkland.com
         anup.sathy@kirkland.com
         chad.husnick@kirkland.com
         emily.geier@kirkland.com
Fax:    + 1 312 862 2200

**Name:** Toys (Labuan) Holdings Limited (a company incorporated under the laws of British Virgin Islands)

| | |
|---|---|
| **Registered Address:** | c/o Toys "R" Us<br>One Geoffrey Way<br>Wayne, NJ 07470<br>Attn:    General Counsel |
| **Contact Person:** | General Counsel<br>Fax:    +1 973 614 4043 |

2

CONFIDENTIAL

**Legal Representative:**      James C. Tecce, Esq.

**Quinn Emanuel Urquhart & Sullivan LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010

Phone: + 1 212 849 7199
Email:  jamestecce@quinnemanuel.com
Fax:     + 1 212 849 7100

## C.  Arbitration Agreement

4.   The agreement to arbitrate disputes is set out in Clause 11.12 of the Shareholders'
Agreement (the "**Arbitration Agreement**"). The signatories to the Shareholders'
Agreement and the Arbitration Agreement include, among others, the Claimant and
the Respondents.

5.   Clause 11.12 of the Shareholders' Agreement provides that:-

"*(a) All disputes arising out of or in connection with this Agreement shall
be finally settled under the Rules of Arbitration of the International Chamber of
Commerce (the "**Rules of Arbitration**") by a tribunal of three arbitrators appointed as
follows: claimant(s), on the one hand, and respondent(s), on the other hand, shall
each appoint one arbitrator for confirmation to the tribunal; the third arbitrator, who is
to act as the Chairman of the tribunal, shall be appointed by agreement of the two
arbitrators appointed by the claimant(s) and respondent(s). Unless specified
otherwise in this provision, the Rules of Arbitration shall govern any arbitration under
this provision.*

*(b) Any arbitration shall take place in Hong Kong, and it shall be conducted
exclusively in and entirely in the English Language.*"

6.   The Claimant understands that:-

(a)  The arbitration shall be administered in accordance with the ICC Rules.

(b)  The seat of the arbitration shall be Hong Kong.

(c)  The language of the arbitration shall be English.

(d)  There shall be three arbitrators (together, the "**Tribunal**").

## D.  Governing Law

7.   Clause 11.11 of the Shareholders' Agreement provides that:-

"*This Agreement and the documents to be entered into pursuant to it, shall be
governed by and construed in accordance with Hong Kong law.*"

CONFIDENTIAL

**E.  Description of the Dispute and the Claims Made**

8.  The Claimant (and its predecessors) have been involved in the operation of the Toys "R" Us business in Asia, initially as the licensee of the Toys "R" Us name, since 1984. The Claimant presently owns 15.13% of the shares in the Asia JV, which owns and operates more than 500 Toys "R" Us retail locations in Asia.

9.  Due in large part to the Claimant's operating expertise, the performance of the Toys "R" Us stores owned and operated by the Asia JV and its subsidiaries has differed significantly – operationally and financially – from all of the other Toys "R" Us stores outside of Asia.  These differences have allowed the Asia JV to grow, expand, and operate while Toys "R" Us, Inc. ("**TRU Inc.**") and certain of its direct and indirect subsidiaries suffered operational and financial difficulties and commenced bankruptcy or insolvency proceedings in other parts of the world.  Neither the Asia JV nor TRU Asia (the 84.87% shareholder of the Asia JV) are Debtors in the Chapter 11 Cases (each as defined below) pending in the United States.

10.  In 2011, the Claimant contributed 100% of its Toys "R" Us toy business to the Asia JV, a then newly formed subsidiary incorporated in the British Virgin Islands and headquartered in Hong Kong.  Thereafter, the Claimant sold 70% of its interests in the Asia JV to TRU Asia, a company incorporated under the laws of England and Wales, and entered into a shareholders' agreement, dated 31 October 2011 (the "**2011 Shareholders' Agreement**"), by and among the Claimant, TRU Inc., and the Respondents to govern the relationship among the Claimant and the Respondents.

11.  In March 2017, TRU Asia contributed 100% of its Japanese toy business to the Asia JV in exchange for an increased equity ownership stake in the Asia JV from 70% to approximately 85%.  In conjunction with this transaction, the Claimant, TRU Inc., and the Respondents amended and restated the 2011 Shareholders' Agreement (the "**Shareholders' Agreement**").  A copy of the Shareholders' Agreement is attached hereto as **Exhibit C1**.

12.  Under the Amended and Restated Memorandum of Association of the Asia JV, a copy of which is attached hereto as **Exhibit C2**, transfers of shares of the Asia JV are subject to the terms of the Shareholders' Agreement.  Specifically, Article 18 of the Amended and Restated Memorandum of Association for the Asia JV provides that "[s]ubject to the provisions of this Memorandum, the Articles and *any shareholders agreement*, Shares in the Company may be transferred" (emphasis added).

13.  On 18 September 2017, TRU Inc. and certain of its direct and indirect subsidiaries (collectively, the "**Debtors**") commenced voluntary chapter 11 cases in the United States Bankruptcy Court for the Eastern District of Virginia (the "**Bankruptcy Court**"). These chapter 11 cases are jointly administered under the lead case *In re Toys "R" Us Inc.,* Case No. 17-34665 (the "**Chapter 11 Cases**").  Significantly, neither the Asia JV (which is incorporated in the British Virgin Islands), TRU Asia (which is incorporated under the laws of England and Wales), nor either entity owning the equity interests of TRU Asia (which are incorporated in the British Virgin Islands) is a Debtor in the Chapter 11 Cases.

14.  On 4 August 2018, certain of the Debtors – Toys "R" Us Europe, LLC, Tru Taj LLC, Tru Taj Finance, Inc., TRU Taj Holdings 1, LLC, TRU Taj Holdings 2, Ltd., TRU Taj

C O N F I D E N T I A L

Holdings 3, LLC, TRU Asia, LLC, and TRU Taj (Europe) Holdings, LLC (collectively, the "**Taj Debtors**") – filed with the Bankruptcy Court *Taj Debtors' Motion for Entry of an Order (I) Establishing Bidding Procedures for the Sale of Certain Assets, (II) Scheduling an Auction and Hearing to Consider the Sale, (III) Approving the Form and Manner of Notice, (IV) Clarifying the Applicability of a Right of First Refusal and a "Drag" Right, and (V) Granting Related Relief* [Docket No. 4016] (the "**Motion**").  A copy of the Motion is attached hereto as **Exhibit C3**.  Whilst there is some ambiguity as to the precise nature of the relief sought in the Motion (as to which see further paragraph 27 below), the substance of what the Taj Debtors seek from the Bankruptcy Court is an order directed to ensuring that the Claimant should not be able to exercise its right of first refusal under the Shareholders' Agreement (the "**ROFR**"), while selectively seeking to allow TRU Asia to enforce the related drag-along rights under the Shareholders' Agreement (the "**Drag Along**") (such issues, and related issues regarding the application of the ROFR and the Drag Along, the "**Share Transfer Issues**").  In effect, the Taj Debtors are seeking permission to force the Claimant out of the Asia JV, in violation of the terms of the Shareholders' Agreement.

15. Prior to the Debtors' commencement of the sale process for TRU Asia's equity interests in the Asia JV, the Claimant, as the owner of the remaining 15.13% of the equity interests in the Asia JV, feared that Toys "R" Us's economic distress in North America would spread throughout the global company.  The Claimant expressed such concerns only to the Debtors and implored the Debtors to take appropriate steps to protect Asia JV's businesses.  Specifically, the Claimant advised the Debtors that, in light of the filing of the Chapter 11 Cases, the Debtors had underestimated the degree of credit and liquidity risks to the Asia JV's businesses, together with the decline in sales performance, across the various Asian markets in which the Asia JV operates.

16. The Claimant also informed the Debtors and their advisors on multiple occasions that the sale of the Asia businesses should be expedited.  In the Claimant's view, delay increased the risk of deterioration in value of the Asia businesses.  To expedite the process, the Claimant expressed the view that bidders should have access to the relevant Asia JV documents and to the Claimant as a shareholder of the Asia JV.

17. There have been numerous predictable impediments to the sale process unrelated to the Claimant, including:-

    (a) the contagion effects on the Asia JV's business stemming from the liquidation of Toys "R" Us's other businesses around the world;

    (b) the unresolved dispute with Geoffrey, LLC and its secured lenders (i.e., the B-4 lenders), on one hand, and the Taj Debtors and their creditors (i.e., the Taj Noteholders (as defined below)), on the other hand, over the rights to and the value of the intellectual property utilized by the Asia JV and its subsidiaries;

    (c) the uncertainty surrounding other potential intercompany claims asserted against the Asia JV; and

    (d) the unduly lengthy sale process (i.e., the Debtors commenced the formal process approximately six months ago – 9 March 2018).

CONFIDENTIAL

18. The Debtors and their advisors have also persistently refused to provide other bidders with access to the Claimant, as a current and potential future business partner in the Asia JV, reflecting the Debtors' and their advisors' underestimation of the value contribution to the Asia JV attributed by bidders to the Claimant's ongoing involvement in the Asia JV's business.

19. This Request is not filed lightly and was necessitated by the foregoing developments in the Bankruptcy Court and the Chapter 11 Cases; particularly, the Taj Debtors' filing of the Motion raising, among other things, the Share Transfer Issues.  These events have required that the Claimant seek to enforce its rights under the Shareholders' Agreement in Hong Kong through the specific mechanism set forth in the Shareholders' Agreement.

**(a) The Tribunal in Hong Kong is the sole forum in which the rights of the parties to the Shareholders' Agreement may be determined**

20. As set out above, the Shareholders' Agreement expressly provides that "[a]ll disputes arising out of or in connection with [the Shareholders' Agreement] shall be finally settled under the Rules of Arbitration of the International Chambers of Commerce (the "**Rules of Arbitration**") by a tribunal of three arbitrators" and that any such arbitration must "take place in Hong Kong."  Shareholders' Agreement §§ 11.12(a), (b).  The wording of the Arbitration Agreement is both mandatory and expressed in the widest possible terms (it covers "*all disputes arising out of or in connection with*").

21. The Share Transfer Issues clearly arise out of and/or are connected with the Shareholders' Agreement, as they involve determining the validity, enforceability, and interpretation of, and/or entitlement to enforce, certain clauses in the Shareholders' Agreement.  As a matter of the governing law of the Shareholders' Agreement (Hong Kong law), they fall four square within the scope of the Arbitration Agreement.  The sole, proper forum to resolve the Share Transfer Issues is by way of an arbitration under the ICC Rules before the Tribunal.

22. The Taj Debtors' Motion in the Bankruptcy Court is a transparent attempt to circumvent the clear terms of the Shareholders' Agreement, particularly given the fact that the Respondents (the counterparties to the Shareholder Agreement) are not even Debtors in the Chapter 11 Cases.  Indeed, the Taj Debtors have failed to even attempt service of the Motion on the Claimant.

23. In any event, the Bankruptcy Court lacks jurisdiction to adjudicate on the dispute for a number of reasons.  In summary:-

   (a) the Taj Debtors did not serve the Motion on the Claimant in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, as is required by Rules 9017 and 7004 of Federal Rules of Bankruptcy Procedure.  Because the Taj Debtors failed to serve the Claimant, the Bankruptcy Court lacks the authority to order the relief they seek; and

   (b) the Bankruptcy Court has neither general nor specific *in personam* jurisdiction over the Claimant. The Claimant is a Hong Kong company—incorporated in Hong Kong and with its principal place of business there—and Hong Kong is where any matter concerning the Shareholders' Agreement should be decided. The Claimant has no meaningful contacts with the United States, let alone contacts that are so systematic and continuous as to render it at home there.  It has no offices or employees in the United States, nor does it solicit

CONFIDENTIAL

any business there.  Moreover, the Claimant has never sought to enforce or assert any claim in the Chapter 11 Cases.

Shortly, the Claimant will be filing in the Bankruptcy Court an objection to the assertion by the Debtors that the Bankruptcy Court has in *personam jurisdiction* over the Claimant, which will articulate these matters in significantly greater detail.

24. The Claimant's partner in the Asia JV, which owes it a contractual duty of performance under the Shareholders' Agreement, is TRU Asia, an English company that is not a Debtor in the Chapter 11 Cases.  The contractual relationship between the Claimant and the Respondents was negotiated and executed in Hong Kong and concerns a company, the Asia JV, which is incorporated in the British Virgin Islands and whose business is centered in and limited to the Asian market.

25. Indeed, the Claimant and the Respondents, each of which is a non-U.S. party, went out of their way to ensure that any disputes would be resolved in Hong Kong alone. The parties expressly chose Hong Kong law to govern the Shareholders' Agreement and agreed on the broad mandatory Arbitration Agreement requiring arbitration in Hong Kong, as set out in Clause 11.12 of the Shareholders' Agreement.

**(b) The Bankruptcy Court lacks the authority to grant the relief requested by the Taj Debtors in their Motion**

26. Even if the Claimant were subject to the personal jurisdiction of the Bankruptcy Court (which it is not), the Motion as it relates to the ROFR and the Drag Along would still fail because the Bankruptcy Court lacks the authority to grant the requested relief under title 11 of the United States Code (the "**Bankruptcy Code**").

27. By the Motion, the Taj Debtors have asked the Bankruptcy Court to either declare unenforceable or to invalidate the ROFR under Section 365(f) of the Bankruptcy Code, while also allowing TRU Asia to enforce the Drag Along.  There is a lack of clarity and some inconsistency in the Motion as to which of these remedies is being sought.  Whichever it is, the objective of the Motion is clearly to seek a determination from the Bankruptcy Court as to whether (a) the Claimant has a surviving entitlement, as against TRU Asia, to exercise the ROFR conferred by the Shareholders' Agreement, (b) TRU Asia would maintain the right to exercise the Drag Along notwithstanding the elimination of the ROFR, and/or (c) the parties should (in the circumstances that exist) be permitted to exercise such rights.  However, these are issues which the parties to the Shareholders' Agreement – the only parties who have a direct interest in, and would be directly bound by a judicial or arbitral determination of, them – have expressly agreed should be resolved by ICC Arbitration, to the exclusion of any other forum.

28. In any event, as a statutory matter, the relief sought by the Taj Debtors does not fall within the ambit of Section 365(f) of the Bankruptcy Code.  Section 365(f) of the Bankruptcy Code permits a debtor in proceedings under the Bankruptcy Code to assign certain executory contracts "of the debtor" notwithstanding a provision in such contract or applicable law "that prohibits, restricts, or conditions the assignment of such contract." 11 U.S.C. § 365(f).  By its plain meaning, the statute only applies when a debtor seeks to assign an executory contract to which it is a party notwithstanding an anti-assignment provision – it does not confer broader authority to rewrite the terms of executory contracts generally.

29. In these circumstances, Section 365(f) of the Bankruptcy Code clearly does not apply for two primary reasons:-

CONFIDENTIAL

(a) the Shareholders' Agreement is not an executory contract "of the debtor"; rather, it is an agreement between the Respondents, which are *not* Debtors in the Chapter 11 Cases, and the Claimant; and

(b) the Respondents are not seeking to assign the Shareholders' Agreement to anyone.  The transaction affected by the ROFR (and the related Drag Along) is simply the transfer of stock of the Asia JV subject, as required by the Asia JV's Articles, to the Shareholders' Agreement.

Although the Taj Debtors elide these distinctions, they are crucial because the specific statute that the Taj Debtors look to – Section 365(f) of the Bankruptcy Code – does not purport to give the Bankruptcy Court the jurisdiction or authority to grant the requested relief.

30.  The fact that TRU Asia's obligations are guaranteed by TRU Inc. is neither relevant nor persuasive.  At most, the only relevance of the guarantee is the impact of the Chapter 11 Cases on those guarantee obligations, but not with the underlying obligations that are covered by the guarantee.  In this regard, it is to be noted that the Claimant has never sought to enforce the guarantee and has not filed a proof of claim in the Chapter 11 Cases asserting a claim on account of the guarantee or otherwise

**(c) The proposed Taj Transaction does not trigger the ROFR, Drag Along, and Tag Along obligations under the Shareholders' Agreement**

31.  The Shareholders' Agreement sets out the Claimant's and the Respondents' rights and obligations in connection with the transfer of shares in the Asia JV.  Clause 3.2 of the Shareholders' Agreement affords the parties with the following ROFR:-

"*(a) If at any time during the period commencing on the Completion Date and ending on the date that is three (3) years from the Completion Date (the "**ROFR Period**") [(i.e., 24 March 2020)] a Party (a "**ROFR Transferring Party**") receives a written, bona fide and arms length firm offer whereby it may Transfer all (and not some only) of its Shares and the Thai Shares (in the case of a Transfer by TRU) held by the ROFR Transferring Party or its Affiliates (the "**ROFR Transfer Shares**") to any person other than an Affiliate of such Party (a "**Potential Transferee**") and such firm offer is acceptable to the ROFR Transferring Party, **the ROFR Transferring Party shall** give written notice of this fact (the "**Offer Notice**") to the other Shareholder (the "**ROFR Non-Transferring Party**") (including the name of the Potential Transferee, the number of ROFR Transfer Shares and a copy of any written offer or similar document which sets out the price and terms offered by the Potential Transferee) and **offer to Transfer the ROFR Transfer Shares to the ROFR Non-Transferring Party at the proposed sale price** (the "**Offered Price**") **and on substantially the same terms and conditions as those offered by the Potential Transferee as set out in the Offer Notice** including the terms of the applicable license from Geoffrey or its successors or assigns for the TRU Asia Business . . . .  The ROFR Transferring Party shall also provide to the ROFR Non-Transferring Party any material information provided to the Potential Transferee.*

*(b)  The ROFR Non-Transferring Party shall have thirty (30) Business Days after receipt of such Offer Notice (the "**Offer Period**") to:  (i) accept the offer contained in the Offer Notice by providing written notice of acceptance to the ROFR Transferring Party before the expiry of the Offer Period; or (ii) consent to the proposed Transfer of the ROFR Transfer Shares to the Potential Transferee at the price and on the terms set out in the Offer Notice.*"

32.  Simply put, the ROFR requires a party that receives a bona fide offer to purchase its shares in the Asia JV to extend the same **sale** offer to the other party at the same

CONFIDENTIAL

**sale** price and on the same **sale** terms and conditions.  The underlying intent is to grant a party the right to purchase its partner's shares in the Asia JV for the same cash purchase price being offered – anything other than a cash offer could result in the inability of one party to match such offer on an apples-to-apples basis.

33. Here, the Taj Debtors have proposed a convoluted set of transactions that purports to be an offer that fits within the scope of the ROFR.  However, in truth, the Taj Transaction amounts to no more than a distribution of control of the TRU Asia's interest in the Asia JV to the holders (the "**Taj Noteholders**") of the 12.00% senior secured notes due 16 August 2021 (the "**Taj Prepetition Notes**").

34. Pursuant to the proposed transaction (the "**Taj Transaction**") among the Taj Debtors and certain of the Taj Noteholders, TRU Asia's shares in the Asia JV and its related controlling entities would be transferred to an entity ("**Reorganized Taj**") created by or on behalf of the Taj Noteholders.  On the effective date of the proposed plan of reorganization, each Taj Noteholder would receive its *pro rata* share of the equity of Reorganized Taj, subject to dilution by a rights offering.  Eligible Taj Noteholders would also receive on account of their claims the right to subscribe for additional shares of Reorganized Taj in a backstopped rights offering, which would seek to raise up to $520 million.  Reorganized Taj would use the proceeds of the rights offering to pay off the outstanding debtor-in-possession financing of the Taj Debtors.

35. In short, the Taj Noteholders have agreed to a recovery on account of their claims against the Taj Debtors, pursuant to a chapter 11 reorganization, consisting solely of (a) ownership of Reorganized Taj, which would control TRU Asia's equity interest in the Asia JV and (b) any cash recovered from other sources of value – i.e., the liquidation of the Taj Debtors' remaining assets.  Consequently, the Taj Transaction is not a bona fide "offer" for the shares in the Asia JV for purposes of the ROFR.

36. Illustrative of this fact, the purported "sale price" for TRU Asia's shares in the Asia JV includes an undisclosed amount of Taj Prepetition Notes held by the Taj Noteholders.  Among other things:-

    (a) Representing, as it does, mere claims in the Chapter 11 Cases of the Taj Debtors, this non-cash component is of unknown value and cannot be replicated by the Claimant for purposes of exercising the ROFR.  The Claimant does not own any Taj Prepetition Notes and the bulk of such notes are solely in the possession and control of the group of cooperating Taj Noteholders proposing the Taj Transaction.  As a result, the proposed offer is not in a form that could trigger the ROFR or would afford the Claimant the ability to exercise its bargained for, contractual rights under the ROFR.  The proposed Taj Transaction simply does not fit within the scope of the ROFR.

    (b) In addition, "credit bidding" is a right that secured creditors have in certain auctions to offset their secured claims against the purchase price of their collateral – effectively exchanging all or a portion of their debt for the assets securing it.  The "credit bid" proposed by the Taj Noteholders is not a credit bid as the concept is commonly understood.  The Taj Noteholders do not have a security interest in the asset being sold – TRU Asia's shares in the Asia JV; rather, the Taj Noteholders are secured by the equity of certain of TRU Asia's direct or indirect parent entities.  As such, the "credit bid" component of the Taj Transaction is illusory.  The Taj Transaction involves merely a distribution of control of the Asia JV to the Taj Noteholders.

CONFIDENTIAL

**(d) The Tribunal must conduct an evidentiary hearing to determine the appropriate value of the "Offered Price"**

37. Even assuming, *arguendo*, that the Tribunal determines that the Taj Transaction constitutes a bona fide sale "offer" within the purview of Clause 3 of the Shareholders' Agreement and, therefore, triggers the ROFR, the purported "offer" amount of $760 million under the Taj Transaction should not be deemed the "Offered Price" for the ROFR.

38. The Motion and the Stalking Horse Purchase Agreement attached thereto state that the "Total Consideration Amount" to be paid under the Taj Transaction is $760 million, which consists of (i) a "credit bid" of Taj Prepetition Notes in a face amount to be determined (the "**Credit Bid Amount**"), <u>plus</u> (ii) cash in an amount of $760 million <u>minus</u> the Credit Bid Amount.

39. The Claimant understands that the Taj Debtors seek to determine the Credit Bid Amount based on the face amount of Taj Prepetition Notes included in the "credit bid."  However, as noted above, the Taj Prepetition Notes are of undetermined value and the "credit bid" is not a credit bid at all, so any rule that would otherwise determine the value of a credit bid by reference to the face amount of debt included in the offer is inapplicable under the ROFR.  Rather, if the ROFR is triggered at all by the Taj Noteholders' so-called offer, the Tribunal must determine what (if any) value to ascribe to the so-called Credit Bid Amount, including the purported non-cash consideration, in order to determine the appropriate value of the "Offered Price" for which the Claimant has, under the ROFR, the option to accept the offer or otherwise consent to the proposed "Transfer".

40. Additionally, since the Taj Prepetition Notes are solely in the control of the bidders making the offer, in the event that the ROFR is triggered by the Taj Transaction, the Tribunal should determine that the Claimant can exercise such ROFR for cash in an amount equal to the arbitration-determined value of the Offered Price.

**(e) The Drag Along and the ROFR are inextricably intertwined and the Drag Along cannot be enforced unless the ROFR is enforced**

41. By the Motion, the Taj Debtors seek to challenge the enforceability of and/or invalidate the ROFR, while selectively exercising the Drag Along.  Under the Shareholders' Agreement, the exercise of the Drag Along is conditioned upon the ROFR, i.e., the Drag Along cannot be enforced unless the ROFR is enforced.  Indeed, the provisions are two sides of the same coin and neither party would have agreed to the inclusion of one right in the Shareholders' Agreement without including the other.

42. Clause 3.6 of the Shareholders' Agreement provides the following:-

> *"(a) If TRU wishes to Transfer any ROFR Transfer Shares . . .  to a Potential Transferee in accordance with clauses 3.2 . . . TRU may, in its sole and absolute discretion, issue a notice within ten (10) days after the expiry of the <u>**Offer Period**</u> . . . ("**Drag Along Notice**") to Fung Retailing and all other Shareholders that are Parties to this Agreement from time to time."*

43. As described in paragraph 31 above, the "Offer Period" refers to the 30-business day period pursuant to which the Claimant **would have the opportunity to exercise the ROFR**.  The Drag Along in Clause 3.6 of the Shareholders' Agreement does not make sense without the ROFR—the concepts are inextricably intertwined.  The Drag Along can only be exercised after the non-selling shareholder declines to exercise its

CONFIDENTIAL

ROFR rights or consents to the sale of the shares.  Excising the ROFR from the Drag Along would allow TRU Asia to exercise the Drag Along without limitation.  That is not what the Claimant and TRU Asia bargained for.

44. The Taj Debtors attempt to strip out the ROFR and keep the Drag Along using Section 365 of the Bankruptcy Code, but the Bankruptcy Code does not allow the Taj Debtors to pick and choose the provisions in the Shareholders' Agreement they wish to enforce.  To the extent that Section 365 even applies, it is well established that Section 365 is a shield, not a sword, and the Taj Debtors cannot cut this key, bargained-for provision in half.  *See In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 772 (Bankr. D.N.J. 2014) (finding that section 365 could be used as a "shield" to "free a bankrupt trademark licensor from burdensome duties that hinder its reorganization" but section 365 could not be used as a "sword" to "take back trademark rights [the debtor] bargained away"); *In re Hirschhorn*, 156 B.R. 379, 381 (Bankr. E.D.N.Y. 1993) ("It is a well-known axiom that the bankruptcy laws are intended to be used as a shield and not as a sword").  It would both be inconsistent with the terms of the Shareholders' Agreement and manifestly unjust to strip the Claimant of the bargained-for ROFR and hold the Claimant to the companion Drag Along.

**F.  Relief Sought**

45. On the basis of the foregoing, the Claimant seeks the following relief from the Tribunal:-

(a) A declaration that, as between the parties to these arbitration proceedings, the Tribunal is the sole forum in which any and all issues raised by the Motion that concern the rights of the parties to the Shareholders' Agreement may be raised, argued, and adjudicated.

(b) A declaration that any decision or order made by the US Bankruptcy Court that purports to adjudicate upon the issues mentioned in (a) above or seeks to give effect to such adjudication, and which purports and/or is intended to bind or confer rights upon the parties to these proceedings (the "**US Bankruptcy Court Ruling**"), would necessarily entail the Respondents being in breach of the Arbitration Agreement and is not binding on the Claimant.

(c) An injunction restraining the Respondents to these proceedings from seeking to rely for any purpose or act upon an US Bankruptcy Court Ruling and/or upon any order of the Bankruptcy Court made for the purpose of giving effect to an US Bankruptcy Court Ruling.

(d) An injunction restraining the Respondents to these proceedings from seeking to rely for any purpose or act upon an order of any other court or tribunal recognizing, giving effect to, or otherwise enforcing an US Bankruptcy Court Ruling.

(e) A declaration that the Shareholders' Agreement, including in particular but not limited to the ROFR, Drag Along, and Tag Along, are valid and binding on all the parties to these proceedings and enforceable by the Claimant against the Respondents in accordance with their terms.

(f) To the extent that the Motion is granted by the Bankruptcy Court:-

CONFIDENTIAL

    i.    A declaration that the proposed Taj Transaction does not constitute a bona fide "offer" within the purview of Clause 3 of the Shareholders' Agreement and, therefore, it does not trigger the ROFR, Drag Along, and Tag Along obligations set forth therein.

    ii.    In the alternative, a declaration that, if the Tribunal determines that the Taj Transaction constitutes a bona fide "offer" within the purview of Clause 3 of the Shareholders' Agreement and, therefore, triggers the ROFR, the purported "offer" amount of $760 million under the Taj Transaction shall not be deemed the "Offered Price" for the ROFR; rather, the Tribunal must conduct an evidentiary hearing to determine the appropriate value of the "Offered Price" for which the Claimant has the option to accept the offer or otherwise consent to the proposed Transfer.

(g) A declaration that, on the true construction of the Shareholders' Agreement, the Drag Along is not enforceable unless the ROFR is enforceable and is performed by the Respondents in accordance with its terms.

(h) An order that the Respondents shall reimburse the Claimant for all fees and expenses incurred by the Claimant in the Chapter 11 Cases to the extent that issues pleaded therein should have been resolved by way of arbitration pursuant to the Arbitration Agreement.

(i) Such additional or alternative relief as appropriate.

## G. Payment of Advance on Costs and Submission of Request for Arbitration and Copies

46. Pursuant to Article 3(1) of the ICC Arbitration Rules, the Claimant will submit by courier to the Secretariat of the ICC Court six copies of this Request for Arbitration, together with all accompanying documents.

47. In accordance with Article 4(4)(b) of the ICC Arbitration Rules, the Claimant will also submit to the Secretariat of the ICC Court, along with its Request for Arbitration and accompanying documents, the US $5,000 filing fee, as prescribed in Appendix III, Article 1(1) of the ICC Arbitration Rules.

## H. Arbitrator Nomination

48. Clause 11.12 of the Shareholders' Agreement provides that arbitration will be conducted by three arbitrators appointed as follows:  Claimant, on the one hand, and Respondents, on the other hand, shall each appoint one arbitrator for confirmation to the tribunal; the third arbitrator, who is to act as the Chairman of the tribunal, shall be appointed by agreement of the two party-appointed arbitrators.

49. Pursuant to Clause 11.12 of the Shareholders' Agreement and Article 12(4) of the ICC Arbitration Rules, the Claimant nominates Anthony Rogers, FCIS, FCS, GBS, QC, JP as its arbitrator for confirmation by the ICC Court.  His contact information is as follows:

      9C Jonsim Place, 228 Queen's Road East
      Hong Kong
      Tel: +852 9288 2910
      Email:  agr@anthonyrogers.com

CONFIDENTIAL

## H. Confidentiality

50. Clause 9.1 of the Shareholders' Agreement provides that "the existence, terms and provisions of [the Shareholders' Agreement], and all information concerning the [Asia JV], any Group Company, the TRU-Asia Business, and all other information obtained or prepared by any Party in preparation for or in connection with the execution of this Agreement and performance of the obligations hereunder ("**Confidential Information**"), is confidential and no Party shall disclose any of such Confidential Information to any other person without the express written consent of the other Parties."

51. In accordance with Clause 9.1 of the Shareholders' Agreement, the Claimant requests that this arbitration be conducted on a confidential basis.

Dated this 23rd day of August 2018.

**DAVIS POLK & WARDWELL**
SOLICITORS FOR THE CLAIMANT